With that, I will hear arguments first in NeXT Investments v. Bank of China et al. I think they call it Mr. Weigel. Yes. Good morning, your honor. My name is Robert Weigel, and I represent NeXT. This case involves an asset freeze order as part of a temporary injunction, TRO, and then a preliminary injunction issued by Judge Shindlin. There is no question that the preliminary injunction and, indeed, the temporary restraining order and the subsequent orders that were issued were served upon the bank, or the bank were given notice, and banks had counsel appearing in this action as early as, when I say appearing, The fundamental, there's really no doubt that the banks had notice of these orders. There's no doubt that the orders specifically state that any third parties receiving actual notice of the orders are restrained and enjoined from withdrawing or transferring any money in and out of the bank accounts that are associated with or utilized by the defendant. There's no doubt, no dispute at this point that the orders, particularly the supplemental order and the third supplemental order, specifically listed hundreds of bank accounts by bank and by account number. And there's also really no dispute that the banks did not immediately comply with those orders. That's what Judge McMahon, who took over from Judge Shindlin, said in her order at 994 in the record. The fundamental error of law here is that the district court was of the view that a court had to specifically order that the banks be bound by the orders before they could be held in contempt. And that simply is wrong as a matter of law. Judge Shindlin issued exactly the type of absentee that was authorized by this court In the case of Gucci v. Lee, Federal Rule 65d2 makes it plain that anyone who is in active concert or participation with the enjoined party who has knowledge of the order is bound by the injunction. The NML case in this court and the Gucci case both make it clear that this is automatic. Every injunction automatically forbids others who are not directly enjoined but who are in active concert or participation with an enjoined party from assisting in a violation of the injunction. This is Judge Park. Could you help me understand the procedural context here, which I think was a little bit different from the Gucci case. Here you didn't make a motion to compel compliance and as I understand it on the bank's original objection to the default judgment you said that it was the legal issues of personal jurisdiction and the separate entity rule and things like that weren't right at the time. So then you went straight to a motion for contempt and the district court didn't think that was procedural gamesmanship and I'm wondering if you could help explain that. Sure. Well coincidentally I was the counsel in the Gucci case as I think your honors may be aware. In that case we hadn't had the benefit yet of this court's decisions in NML and the Gucci case which make it clear that the injunctions automatically forbid and also in NML the court made it clear that determinations of personal jurisdiction are premature before the third party is called to answer for a violation of the injunction. So that's why we did it that way. We made it clear in our brief that Judge Schindler we say of course once a district court issues an asset freeze order enjoining parties over whom it has jurisdiction that injunction automatically forbids others who are not directly enjoined but who act in active concert of participation with an enjoined party from assisting its violation. We quoted the Gucci case which in turn was quoting NML. But we went on to say that the bank concern that they may someday be held in contempt depends upon the improper assumption that the counterfeiters will disregard the proposed order if entered and that the bank will assist the counterfeiters. Doesn't Gucci also say that before forcing the banks to comply or any third party that's foreign entity to comply with an asset freeze you need to conduct a comedy analysis and it's pretty clear that the district court here kept deferring the comedy analysis to a later stage, right? At the default judgment Judge Schindler says if plaintiffs do eventually seek to compel the banks to freeze those who oversee the assets there within the control of comedy analysis may then become appropriate. But then she was saying that it wasn't appropriate at that time. And so if a comedy analysis is a precondition to requiring a foreign bank to freeze the assets and the district court never completed that condition, did the district court seem to think that it wasn't requiring the overseas branches to freeze the assets? No, absolutely not. If you look at the order that Judge Schindler issued, she says, although the proposed default judgment would order the banks to comply with an asset freeze because this judgment is not directed at the banks, it would be premature for this court to conduct a hypothetical comedy analysis at this time. And that's really the issue, Your Honor. Judge Daniel said it in one of the district court cases. I don't know what's going to happen. I don't know if the counterfeiters are going to honor the injunction. I don't know if you're going to prevent them from violating the order. I don't know if you're going to go along with it. As we just said a moment ago in Gucci, it wasn't about contempt sanctions. It was just about a motion to compel. It's just about requiring the banks to abide by the asset freeze. And our court still said that you need to undertake a comedy analysis before doing that. So if the district court is saying that a comedy analysis is hypothetical and premature at that time, doesn't that mean the district court thinks that it's not requiring the overseas banks to comply yet? No, I think that's actually wrong, Your Honor, successfully. I think the NML case makes it clear that you get to come and be heard when you're called to answer for violating the injunction. There's no case or controversy. It's a hypothetical advisory opinion saying, yes, you can help the counterfeiters violate the injunction. There's no question. The counterfeiters are not supposed to violate the injunction. The only question is, should the bank be allowed to come to the court before they are imminently going to do that and be given comfort that it's OK to help the counterfeiters? It's a completely unworkable analysis because if you require a comedy analysis before a third party can be bound, you've effectively eliminated the possibility of an asset freeze because by the time the court, no matter how quickly the court does it, by the time the court gets around to resolving it. As you mentioned, a lot of the orders mentioned financial institutions that would be in active concert or participation with the counterfeiters, so the district court could have very easily said, well, among those financial institutions are foreign branches of banks, and we understand that the Second Circuit has said we need to undertake a comedy analysis before enjoining those branches. And so here are the comedy factors, and therefore it applies to them. Why couldn't the district court have done that? Why did it keep deferring the comedy analysis? Well, first off, the order expressly does reference the banks, and the banks knew it referenced the banks because they wrote a letter to Judge Shulman in which they said the objectionable portions of Nike's proposed judgment provide for a post-judgment perpetual worldwide asset freezing injunction extending to the bank accounts identified in Exhibit 3, and more than 150 of the accounts listed in Exhibit 3 are allegedly held at one of the banks. Now, this whole debate was taking place in 2015, essentially 18 months or so after the first orders were issued. So it is clear that the banks did not seek any guidance for the court for the first 18 months, and they did not disclose to the court that they were actively engaged in assisting the counterfeiters in violating injunctions at the time that they were writing to Judge Shulman asking about the... Sure, well, they did say to tell the court, we don't think that you can enjoin us until you address these issues, which are, I mean, they said jurisdiction and separate entity rule and comedy, and then the district court said, well, it's premature to address those questions because the injunction doesn't apply to you. I mean, wouldn't a party that had sought that clarification and got that response think, okay, well, they're not requiring us to do anything yet, so we're going to wait until we have our objections resolved? Excuse me, your honor. Your honor, what they did was, they weren't asking the court, is it okay if we do this? What they were asking Judge Shulman to do was not to issue the order restraining the What the legal network case says is that if you're going to enter into transactions, which raised doubt as to the applicability and injunction, they may petition the court granting it for a modification or construction of the order, but that it has to be a concrete situation. That's what legal network says, and this was not a concrete situation. It was, but the banks didn't tell the court that. Banks did not come to Judge Shulman and say, look, the counterfeiters are asking us to drain the account. Can we do that? Does the order on its face apply to us? What they came in and they said, your honor, you can't issue this judgment. And it's a completely unworkable situation. It's, you know, first off, it doesn't. It would have been workable if they had come in and they said, the counterfeiters want to engage in transactions. Are we allowed to do them? But it's unworkable if they come in and they say, we are concerned that you don't have the authority to prevent us from providing banking services. Could you please address our objections? And in both cases, aren't they just seeking the district court to address the comedy issue and the other issues before requiring them to comply? No, I would say that, I mean, yes, they could if they had come in when the first supplemental order was issued and said to Judge Shulman at that time, the counterfeiters have asked us to assist them in violating this injunction. May we do so? That would have been appropriate. Instead, what they came in was 18 months later, they came in and they said, you can't issue the kind of order that post-judgment that the Gucci court held that you could issue pre-judgment. So, yes, the difference is if the banks would have held on to the money and sought permission in advance to do something, they would not have violated the injunction and Judge Shulman could have decided it one way or the other. But that's not what they did. They sat, they concealed until we forced them by proving that there was personal jurisdiction over them and forced them to comply with- Okay, I think I have that argument. Can I just ask you one other question before we have to turn to the other party, which is, you say that there might not be a good reason to follow the separate entity rule when we're dealing with matters of federal law because it's a matter of state law. And maybe we haven't explained clearly why we follow it, but do you dispute that, in fact, our court has followed the separate entity rule even when awarding damages for violations of federal law, just as a matter of precedent? Certainly, this court has followed the separate entity rule, but I would argue that the separate entity rule has no application in this case. We got personal jurisdiction over the banks in China because they transacted business in New York through their clearing account. And as a result, the banks themselves in China, as separate entities, were subject to this court's jurisdiction. The Motorola case, which reinvigorated the separate entity rule, was a pre-Daimler at the district court level. Jurisdiction was based solely on the fact that there was a branch in New York that the bank account in that case... Right, okay, so you're not actually saying that because it's a state law rule, it shouldn't control when we are awarding damages for a violation of federal law. You're saying that it does apply in general, but it doesn't apply here because there's jurisdiction over the Chinese branches. Yes, although I would make the point, Your Honor, that the separate entity rule is a separate issue and that it is not uniform. Illinois, Florida, Hawaii, Michigan, Missouri, all have rejected it. And we got this order under the Lanham Act, which is obviously a federal statute and uniform across the country. So it doesn't make any sense that the Lanham Act injunction... Of course, corporation's law might not be uniform across the country, but of course we defer to how the state defines the corporate form and so on. There are things that are not uniform that still might regard how we treat parties and award relief. Right, and in fact, you should do it in compliance with the state. Go ahead. Since this is a federal injunction and Rule 65 doesn't vary according to state, it would lead to an absurd result, as everyone, as the amici are referring to it, that if you had a bank, a foreign bank that had a branch in New York, that you could not restrain its foreign bank that did not have a branch in New York, that somehow that you could. The separate entity rule only applies in this court in the decision that referred the case to the New York Court of Appeals as higher engineering and distribution case, describes the rule as even if a bank is subject to personal jurisdiction due to the presence of a New York branch, the other branches of the bank will be treated as separate entities for certain purposes, such as detachment, restraints, et cetera. It's keyed off of the fact that jurisdiction is based upon the fact that there was a branch doing business in New York and the Daimler case eliminated doing business jurisdiction. There is no more. If you have an office on Madison Avenue, you can be sued in New York for every purpose. So that was replaced in New York in part here by the Leachy case, which holds that if you do maintain a clearing account in New York. So do you think that the separate entity rule was intended to address problems of general jurisdiction that existed before Daimler, but Daimler kind of addressed that problem and so therefore it has much less relevance? Is that your position? That is definitely my position. It was a case, it arose from a case where standard charter, the standard charter account in question had nothing to do with the underlying cause of action against the Usans in that case. In that case, it was just a bank account that they happened to find. In our case, these bank accounts received multiple wire transfers, hundreds of wires and thousands of MasterCard and Visa transactions were processed through bank accounts in New York that these banks had set up to take advantage of the New York banking system. And there's no question here that there was personal jurisdiction over the bank. It was determined in the motion to compel the production document, that decision would not appeal to this court. And Judge McBain in her order makes it plain that the banks are not contesting personal jurisdiction here. So they are essentially arguing that the fact that they have a New York branch, which is irrelevant to the jurisdictional arguments that the court relied upon, somehow is a get-out-of-jail-free card that allows them to completely ignore the orders of this court. Thank you counsel. I'd like to ask just a couple of questions. Since you ended with a separate entity, as I hear you counsel, you gave two different to Judge Menasche. On the one hand, you seem to be saying separate entity doesn't apply here because there is personal jurisdiction over the banks. Then when you referred to the fact that the separate entity rule is not followed in other states, you seem to be saying that because this is a Lanham Act case, we don't have to worry about the separate entity rule at all because it's only New York and it's not a general rule. So are you saying that we should not consider separate entity at all because this is a Lanham Act case? Or are you saying, yes, it is available to apply in some Lanham Act cases, but not here because there is personal jurisdiction? Which is it? With respect, your honor, I think you've gotten my argument correct. I think there are two grounds why it doesn't apply. Well, which? Oh, are you saying both? You can, if you want to say both, but you gave the two answers. I just want to know, are these alternative answers or are you saying they both apply? We don't use separate entity because the Lanham Act precludes its use and even if it doesn't, it precludes it here because of personal jurisdiction. Is that your position? Yes, your honor, that this is a federal, I have two points to my argument. One is that it is a federal. If you're making both, that's fine. I'm just trying to understand it. All right, moving on. Is there, leaving aside that separate entity for the time being and leaving aside personal active participation for a minute, do you contend there is an order of the district court that restrained the action of the banks? Absolutely, your honor. And which order is that? It is the preliminary injunction does that and the supplemental order and the third supplemental order, all the bank accounts and all make it clear that the accounts are- Well, all right, they let bank accounts. Could you read me the operative language that in effect says the bank shall not do certain things? I can, your honor. And hopefully tell me what page I'll find it on. If you'll give me a minute, I have- It's certainly not in the default judgment. You'd agree with that, right? The default judgment refers back to the preliminary injunction and the preliminary injunction- You started by saying, you quoted Judge Genlin saying the default judgment is not directed at the bank. That's what she said and she's right, isn't she? But she said it's fine, that's what the order that she said that she issued prior to issuing the preliminary injunction or the default judgment. She issued an order which made it very plain that they were required to, that the order restrained the bank. Let me first go to the preliminary injunction. On page 287 of the order, it says- 287 of the order or the appendix? I'm sorry, page 287 of the joint appendix. All right, and what does it say that, where does it say it finds the bank? It says all third parties, it says it is further ordered by automatic operation 65B2 that all third parties who act in active concert of participation with the defendant and who receive actual notice of disorder by personal service or- Oh, all right, all right. Well, then you misunderstood my question. I said leaving active participation aside for a moment. So your position is the preliminary injunction bound the banks because it bound those in active participation with the defendant. Is that your position? Yes, that is absolutely my position. That is why 65B applies. All right. Now a preliminary injunction, as its name implies, is preliminary to a final judgment. Was there a final judgment in this case? Yes, there was, your honor. All right. Did that end the operation of the preliminary injunction? Yes. All right, then what post-judgment order bound the banks? Okay. First off, your honor, just to be clear, we are alleging numerous violations of the preliminary injunction and the supplemental order that occurred prior to the entry of the judge. But leaving that aside, if you look at page JA-511, it is Judge Shinlin's order that accompanied the judgment in which she rejected the bank's attempt to prohibit the court from issuing the judgment. And it says, although the defaults proposed to false judgments would order the banks to not direct it against the bank, it would be premature for the court to undertake a hypothetical common analysis. And this is exactly the formula that was set forth by this court in NML and in Gucci. I'm sorry, before you finish your answer to that question, can I just point out, like right after that sentence, it says it's possible that defense will comply, and therefore the banks would never be required to take any action with respect to the asset free. If plaintiffs do eventually seek to compel the banks to freeze those of defendants' overseas assets that are within their control, a comedy analysis may then be appropriate. So that means that at the moment, no one is seeking to compel the banks to freeze those of defendants' overseas assets that are within their control. Isn't that the implication of that sentence? I would say no, your honor. I would say that the prior sentence makes it abundantly clear that what the court is trying to do is follow the framework that this court set out in NML and Gucci, which is that- So why would the order set out the possibility that the banks might never be required to take any action with respect to the asset free, and that plaintiffs might eventually seek to compel the banks to freeze those of defendants' overseas assets that are within their control? But why would the court say that if that had already happened, if they were already compelled to freeze the assets? Okay. The simple answer is that one does not presume that the defendants will violate the court order. The presumption is that the defendants will honor the court's injunctions and not attempt to move money from their bank account. That is really the- But that would be complying with the asset free, right? That would be for the defendants, right? The asset free binds the counterfeiters, and the court is saying here that there is at least a possibility that the counterfeiters will actually honor the court's injunction. And, you know, the Regal Network case makes it plain that there's not a lot of cases in this area because it's mostly prospective, right? In other words, people don't get close to the line when there's a court order. So what happened here is that the judge said, if the counterfeiters comply with the order, you banks are not involved at all, right? I mean, you don't have anything to do with it. The counterfeiters never show up on your doorstep and say, move this money. Okay, I think I have that argument. I didn't want to interrupt Judge Newman's line of questioning. So Judge Newman, you can go back to- Okay, thanks. So just continuing for a moment, counsel. After the judgment was entered, did any order bind the bank? Are you asking me if the judgment found the bank? Because the judgment says- I'm giving you a broader chance than that. I'm saying once the judgment was entered, did either the judgment or any subsequent order bind the bank? Yes. And which one? Is it the judgment or is it a subsequent order or both? It says in paragraph 10, that according to rule 65, all defendant's assets that have been previously identified as frozen or were otherwise required to be restrained in compliance with this court's orders continue to be restrained, regardless of whether defendant's assets are located in the United States or abroad. It then contains an exhibit three, which lists the bank account, which the counterfeiters, or I'm sorry, which the banks acknowledge, lists 150- Where is the language that- Binds the bank. That's what I'm seeking from you. The language that binds the bank is the rule 65, is the order that incorporates the- All right. So is it fair to say no order of the court explicitly named the bank, but you believe they are bound because they are in active participation with a defendant? Is that fair? No, I don't think that is fair, Your Honor. If you look at the last- Well, then, leaving aside- Well, then, all right. Well, that's- Let me go back to where I started. Without regard to the active participation argument, what order binds the banks at and after the judgment? Well, Your Honor, I would agree with you that without active- I don't want you to agree with me. I want you to tell me, is there an order that binds the bank at or after the judgment? Either there is or there isn't. Yeah. The judgment- All right. You say there is. Again, which order is it? I've asked it now three times. All you've got to do is say, yes, it's the order of such and such a date located at J.A. page X. But I haven't heard you say that. At J.A. 527. Oh, all right. And what does that say? Do I have 511? I don't know. At 527, it says- It is the back sentence of the paragraph that incorporates Rule 65 and says that the assets previously identified as frozen or otherwise required to be restrained continue to be restrained regardless of whether defendant's assets are located in the United States or abroad. And then it goes on to say, this includes, but is not limited to, the accounts identified in Exhibit 3. And Exhibit 3 is a list of accounts that the bank told the court at J.A. 1096 contained 150 accounts that were allegedly held at one of the banks. And Exhibit 3 lists the account number and the bank. So, yeah. You've established that the order identifies what accounts are frozen. You have yet to tell me what order says the banks are barred from doing something. We're not here- You're on it. We're not here worrying about whether the counterfeiters can use their accounts. They're not before us. You're after the banks. So, I keep asking, what says the banks can't do something? And all you tell me now is, well, there's an account number that is frozen. So, is that it? That's what you rely on? Or are you, as I thought you were going to say, relying on the active participation prohibition of Rule 65? Your Honor- I'm not arguing with you. I'm just asking you what you're relying on. Your Honor, we are relying on active participation or- Okay, fine. Well, it took a while to get there. All right. Now, the next question then for Matt is, what act of the bank constituted active participation? Okay. The act that constituted active participation were effectuating the transfers that the counterfeiters asked them to make. By effectuating, you mean permitting, don't you? No, I mean- What did they do specifically that was active? Well, let's start. Let's back up a step. The counterfeiter had an account. I take it there was cash in that account at the relevant time. Is that true? Well, in some of those accounts, yes. The banks allowed the counterfeiters to make deposits into those accounts and to make withdrawals into those accounts. And it did it 36,000 times. And the reliance in some states- Well, you're not complaining about the deposits, I take it. You're complaining about the withdrawals. Is that right? Well, actually both because they allowed the counterfeiters to continue to operate their businesses. And as the subsequent order of the court indicates, the counterfeiters themselves continued to act in contempt of the court. And we didn't know any of this until we got the discovery from the banks. Well, wait, leaving the deposit, they took money out of their own account. Is that correct? Yes. Do we know how much money post-judgment was taken out of the accounts? I don't have at my fingertips the post-judgment amount, Your Honor, but in total, it was approximately $69 million in transactions occurred. Approximately half of those were withdrawals. So more than $30 million were withdrawals. So that's really the core of your saying. By permitting a party whose asset, whose account has been frozen to withdraw funds, a bank that permits that is acting in active participation, right? That's what you're saying? Yes, and that's what the Reliance Insurance case says in the 10th Circuit, where it makes the point that the defendant could not have completed the transactions, thereby violating orders, without aid and assistance of the bank. Banks move money. Customers don't move money. Whatever the customer can ask the bank to do something. But the bank is the one that actually effectuates the transfer on its books. And finally, you said you are seeking contempt because of a violation of the preliminary injunction. When did the preliminary injunction violations occur? In what years? The preliminary injunction was issued in 2012. And there were violations throughout. I can't give you the exact date. Well, when was the last one? How about that? The last one was... No, don't tell me there. Just tell me what you say is the year of the last violation. 2017, Your Honor. And when did you seek contempt? We sought contempt in 2018. All right. And then my last question is, dealing with Judge Sinland's remark, which has been read now twice on page 3, J.A. 511, where she says, if the plaintiffs do eventually seek to compel the banks to freeze those defendants' overseas assets... Your Honor, I didn't follow. Well, I'm just reading what she said. ...begins if, if plaintiffs do eventually seek to compel the banks to freeze assets that are within their control. So my last question is, did you seek to compel the banks to freeze assets, other than by bringing contempt action? Before you brought your contempt action, did you seek to compel the banks to freeze assets overseas? We did not, Your Honor. You did not? I misspoke, Your Honor. We filed the contempt motion in 2019. 2019, two years after. Okay. All right. But let's be clear. You did not seek to compel the banks to freeze the overseas assets within their control? We did, Your Honor. We called them repeatedly what they supplied, and that was the whole point of this injunction, which would otherwise be completely worthless. I take it when the judge said, seek to compel, she meant come to court. You didn't go to court to seek to compel, right? The timing of this, Your Honor, is that we first had... No, no, no. Don't tell me about timing. It's a simple question. She says, if you seek to compel, and I'm asking, did you seek to compel? You either did or you didn't. We sought to compel their compliance with the order by moving for contempt. Well, the hesitation and the complication of your answer, I must tell you, counsel, is very eloquent. I'll give you one more chance. Other than bringing the contempt action, did you seek to compel the banks to freeze the accounts? We did not make a specific motion directed at the banks prior to the contempt motion. Was we? Except for the motion to compel the discovery. Okay. Thank you, Mr. Weigel. You're well over time, so we'll turn to... You've reserved three minutes for rebuttal. Let's turn to at the lease who provided their time. I think Mr. Weisbord is up first. Yes. Thank you, your honor. May it please the court, Sanford Weisbord for the five non-party of healthy banks, other than Agricultural Bank of China. The district court acted within its discretion ruling for several reasons that the high bar to find civil contempt was not met. I'd like to begin with page 511, which received some attention during opposing counsel's argument. And at 511, as the court has recognized, Judge Shinlin said that if a motion to compel was at that time, it would be appropriate to resolve the separate entity rule and comedy issues that the banks had timely raised. Now, I think it's important to note that that language from Judge Shinlin didn't come out of nowhere. It actually came from and had precedent in Nike's own submissions to the court. And I'd refer the court to page 1102 of the joint appendix. And I'd like to just read one sentence. This was at the fall judgment stage. And what Nike said at that time was if the court later needs to compel the banks to take or refrain from any specific actions to prevent the counterfeiters from filing default judgment, the court can then evaluate whether personal jurisdiction exists over the banks and whether any comedy issues exist for the court to consider. So we had both Nike and then Next. And we also had the district court on two occasions saying that this issue is not right. And as several questions also noted correctly, this comes also straight from Gucci. Because in Gucci, as an absolute prerequisite to compelling an asset freeze, not contempt, but compel, the court has to engage in a comedy analysis. And in Gucci, this court remanded for the district court to do so. So all of the signs here were that we would have a motion to compel at which time separate entity rule and comedy would be resolved. And that never happened. Judge McMahon found that the problem here was that Next jumped immediately to the contempt stage. And under a decision such as Chow and other decisions from this court, that's an inappropriate move. The compel stage, at least when a non-party like the banks timely raises these issues, the compel stage is the right stage to resolve these questions. Now, we talked a little bit about regal knitwear. And I think it's important to note that regal knitwear, which also was approvingly cited by this court in NML, says that a non-party that has doubts over whether it's appropriately subject to an order as a third party can come to the district court. The district court's door should be open and the district court should give a resolution. Now, the banks did do that. They did it on a timely basis. And they were met with this assurance from Next and Nike that they were not seeking to enforce. They would later seek to compel. Again, that's 1102. And so this was a frustration. Is that due to the faulty? 1102 of the appendix. Is that the site you're giving us? Yes. Yes, your honor. 1102 of the appendix is a letter from Mr. Weigel and Gibson Dunn. So again, we have to remember that we're in the context here of a contempt motion. And I think the decision in Chow is actually very instructive because there you actually had a disagreement among the panel members over the actual merits issue. But all three panel members agreed that because there was legal uncertainty, it would be inappropriate to impose a contempt sanction. That is the case here as well. Judge McMahon correctly decided that it would be unreasonable to decide these disputed issues on pain of contempt. Now, Judge McMahon then went further and addressed the separate entity rule on its merits. Judge McMahon also flagged the comedy issue and did not resolve that, but left it open if necessary for the future. But the separate entity rule analysis was... Before we get to the separate entity rule, could I just ask you about active concert? So you were saying there's some ambiguity as to whether the order applied to the banks. But the reason that the banks went to the district court was because you could tell from the order that it purported to require the banks to freeze the assets, right? Yes, I would agree. And I think I would note that... The order was not ambiguous on that point. But you had defenses that you raised to the district court that you wanted the district court to address before the order was going to find your client. Yes, that's correct, Judge Menasci. I don't think that the order is ambiguous. It definitely refers to 65 D2C. Where the ambiguity lies, however, is in whether that was a permissible order. And we know from Gucci... Right, and so can I ask if that... Sorry, so we know from Gucci that when you're dealing with third-party banks that are overseas, there's a comedy analysis that needs to be done before it's compelled. But if you were a domestic bank, if there were some defendant who was subject to an asset freeze, and then the plaintiffs in that case made his bank aware that he was subject to an asset freeze, and the next day that defendant walked in and tried to take all the money out of his account, and the bank facilitated that transaction, you wouldn't deny that the bank in that kind of situation would have violated the injunction, would you? It's certainly a more difficult case. But we have cited in our brief case law that we heard opposing counsel mention the Reliance case. But there are other cases that do explicitly hold, and I refer the court to the All-Star case and the Motorola District Court case. Those district court cases hold that routine banking is not active concert and participation. Instead, it's a more passive allowance of withdrawals or deposits from an account. We do make that argument. If there's a defendant who's subject to an asset freeze, and his bank, he's not allowed to take any money out of the account, and his bank is aware of that order, you're saying if the bank issues him a check for the full amount that's in his account, that bank has not acted in active concert or participation with him and is not in violation of anything. What I'm saying is that there is a difference of opinion among district courts. This court has not ruled on it. The Reliance case from the 10th Circuit, we believe, is distinguishable because the bank there did more. It opened new accounts for the defendant and helped convert some monies into coins and other precious metals. It was more there than just merely allowing withdrawal. But certainly, and not to resist your Honor's hypothetical, I would respectfully suggest that the active concert and participation should also be viewed in the context of the fact that these are foreign branches and that ordering a Chinese branch- Well, granted. I just wanted to understand the scope of the active concert or participation. But you're saying that even if you were domestic, you still wouldn't acknowledge that providing banking services that allowed the counterfeiters to deplete their accounts would have been a violation of the injunction? We do make that argument. And just there's a couple of policy arguments and rationales to be aware of here, which is, one is that there was actually no proof that tying the monies in these accounts to proceeds of counterfeiting. It could have involved some innocent proceeds- But why do you need to tie it to counterfeiting? The order says they're subject to an asset freeze. No money can move in or out of the account. And the banks are aware of that order. So when we talk about active concert or participation, you're acting in active concert or participation to violate the injunction. It's not about participating in the counterfeiting scheme, is it? No, but when we get into the situation of innocent proceeds to the extent they exist, and also keeping in mind this was a default judgment by the counterfeiter defendants, there was never an actual adjudication of which proceeds were which. But I certainly, I don't want to, I want to make clear, this is not our primary argument on contempt. Our primary argument has to do with the raising of the separate entity rule on comedy and the lack of resolution based on those appendix citations I gave. I would urge the court to consider active concert and participation short of an auxiliary additional point in support of that. Well, counsel, counsel, look, I appreciate what you think is your primary argument, but your primary argument, the extent it raises comedy raises very subtle issues involving international relations and things like that. If what you now say is just your secondary argument that you weren't in active participation, that makes a lot of issues go away. So my question to you is, I appreciate you tell us the laws in some, there's some conflict on that, but is it your position, very simply, that you did nothing that was inactive participation with a defendant? Yes, that is our position. That is our position, your honor. Yes. All right. It is. All right. Okay, can we just forget the, sir? Okay, just to pursue it, I don't know why you would want us to go on to comedy if there's a simple position. Now, I also want to ask you about your earlier answer to Judge Menashe, where active participation came up. It sounded to me, maybe I misunderstood, but it sounded to me like you said, yes, the order did bind you because it applied to parties who were in active participation. Is that what you meant to say? No, I meant that the only plausible hook, because the orders do not specifically order the banks by name to do anything. The only theoretical is it would bind you if you were in active participation. Is that correct? Yes. If we were in active concert of participation, if the order were permissible as a matter of the separate entity rule on comedy, which we argue it was not, and furthermore, if the order adequately identified the account numbers, which again, we also argue in our briefs, it did not. For all of those reasons, the orders were not clear and not ambiguous enough to support contempt sanctioning. All right. Now, did you have an opportunity before the contempt proceeding to go to the district court and seek a clarification whether permitting withdrawal of funds would deem you to be in active participation? We did not raise that issue before the contempt stage. Unlike the issue, did we have an opportunity? Yes. I would concede that we could have raised active concert of participation earlier. I don't believe we were required to do so. And the reason for that, yes. Yes. What is it that where in the law is that a party in your position does not have to seek active participation? Yes. And I think just keeping in mind that we're in a civil contempt, not a criminal contempt scenario, I would cite the court to the United States, the United Mine Workers case from the US Supreme Court, 330 US 258. Well, that's a party. The party violates at its peril. No, the point that the principle. Sorry, sorry. Like IBM, a party violates an order at its peril and defends it on contempt. That's not true of a non-party, is it? Well, typically, as far as I'm aware, the non-parties are given at least as or greater rights as a party in that situation. But the principle I was trying to draw from the United Mine Workers case is that you are unlike in the criminal contempt situation, the civil contempt situation, a party who the order did not appropriately apply to that party in the first place. And that's what that case stands for. Now, that the situation we as your honor, yes, but of course, but when you say didn't apply in the first place, if if whether it applies turned on active participation, aren't you a lot better off getting that ruling early before? Otherwise, you're acting at your peril, as you did here. If we think letting the funds be withdrawn is active participant participation, then you may well be in contempt. I appreciate you also have comedy arguments and separate entity arguments, but just with respect to active participation and you have told us you don't think permitting withdrawal is active participation, you could have, am I right, gotten that cleared up by the district court? Well, at least after the very first withdrawal, maybe you couldn't come in before the first one. But once you saw a withdrawal, you could certainly come in before the the amount ran up into the million. Right? Yes, I would not deny that that issue could have been raised. It was not raised at that time. It would have been and you don't need to. Well, it is our position that we don't need to. But of course, our additional, as your Honor notes, Judge Newman, we have to win on the active concert and participation standard in that event, as opposed to just showing that there was a we have to win on that standard. But but again, the the the separate entity rule and I apologize for repeating myself here, but I think it's important. The separate entity rule and comedy issues were raised back then and there was ambiguity at at worst for the banks. There was ambiguity. We think. OK, can I ask it? Can we can I ask about that about the separate entity rule? So why do we follow New York separate entity rule when we're a federal court awarding for violations of federal law? Sure. So I think it's helpful to view the case in two phases here. One is up until judgment and then after judgment. Let me begin with after judgment. Once we're after judgment, Rule 65 does not apply anymore because there was no injunction left. Rather, this. So you're saying we're abiding by 69 A1 because you're doing a money. Yes, yes. Once. Right. But does that mean does that sorry, just to clarify, does that mean that if. Next had sought contempt sanctions before there was a final judgment just in the course of, you know, until there was a final judgment, they thought you had violated the orders and contempt sanctions, then the the separate entity rule would not apply because Rule 69 would not govern. Rule 69 would not govern prejudgment. However, we've cited the court to the Allied Maritime case from this court that shows that in other federal context, this court in its discretion has looked to the separate entity rule in New York state law. And furthermore, I think it's important to recognize the separate entity rule is really a bright line rule of comedy that New York has adopted. But comedy itself certainly applies prejudgment. And we know this, again, from Gucci, because in Gucci, that's a prejudgment scenario. Comedy is raised, has to be addressed and resolved before you can compel us. We've noted so. OK, so it's a bright line. It's a bright line rule of comedy. And that's fair that comedy applies before judgment. But let me ask, I mean, if the separate entity rule doesn't say that you can never reach foreign branches, it just says you need to treat domestic branches and foreign branches as separate entities. And in this case, didn't the district court decide discovery motions that there was jurisdiction over the foreign branches as foreign branches? That is, it said, even though the physical location of the bank records were in China, it doesn't bar enforcement of the subpoena because there's personal jurisdiction over the Chinese branches because the Chinese branches had purposely availed themselves of the New York market. Why doesn't that holding is correct? Wouldn't that mean that even complying with the separate entity rule, you'd be able to reach the foreign branches? No, the answer to that is no, Your Honor, because even if there is personal jurisdiction, and just as an aside, the personal jurisdiction decision was only for purposes of discovery, not for purposes of the asset freeze. But even if there is personal jurisdiction, the separate entity rule, as well as comedy, are doctrines that are separate from personal jurisdiction. And if I could just give the court a couple of citations on that point that are in our briefs, but I want to emphasize them. Motorola, the New York Court of Appeals decision 21NE3 at 227 note 4, recognized that there was a recent decision. It was just unclear whether there was personal jurisdiction. And the New York Court of Appeals said, we're going to still address the separate entity rule. And we're going to let the federal courts deal with personal jurisdiction at some subsequent stage. So the New York Court of Appeals certainly didn't view those issues as rising and falling. But even more important than Motorola, this court in the Peterson v. Islamic Bank case, 876F3 at 94 and note 22, said that if on remand, the district court found personal jurisdiction, quote, the court should determine if a barrier, and note 22 says one of those barriers is a separate entity rule, exists to the exercise of impersonal jurisdiction. So this court has recognized that the separate entity rule is a separate doctrine. OK, so even if it is a separate doctrine, so what does it require? So let's say we have a case where we think that the Chinese branches did purposefully avail themselves of the New York market. And there is personal jurisdiction over those branches. What else would the district court need to establish in order to subject the Chinese branches to the asset freeze in order to comply with the separate entity rule? If the separate entity rule applies, what outlet does Nike or Next have? It's our position that they would have to bring suit in China to enforce the judgment.  And I think that separate entity rule doesn't just say that you need to treat the New York branch and the Chinese branches as separate entities. It's a strong rule of comedy that says you need to go to China to get relief. You can't get it in the United States. Yes, yes, that is our position. And how do you clear that with the language of the New York Court of Appeals that says it's about treating the New York branch as a separate entity from the Chinese branches? How do you go from there to the idea that a U.S. court can never reach the Chinese branches, even if it treats them as a separate entity? So the language I'd refer the court to in the New York Court of Appeals decision, and it's under heading two, footnote one, second paragraph, the court refers to opening a branch in New York, quote, and conducting business in New York. And here I think it's important to remember the hook here was both that there was a New York branch. That's who Nike and Next served in the first instance. But then it later became a different hook, which is that they were using these correspondent and settlement accounts at other branches. And what is what does that all mean? It's sort of complicated. What it means is that the Chinese branches were, in effect, subcontracting some banking to other U.S. banks. And that is doing business in New York. And the amicus brief by the Institute of International Bankers makes clear that if that were a hook to undermining the separate entity rule, then there would be no separate entity rule, because in international banking in today's world, all foreign banks are using New York based bank accounts to do correspondent and settlement transactions. So there would be nothing left of the separate entity rule or of comedy if that were the approach. So just to be clear, our position as a matter of both comedy and the separate entity rule is that Nike and Next, to enforce this in terms of an asset freeze, respecting Chinese sovereignty and respecting the need to avoid subjecting the banks to conflicting obligations under Chinese and U.S. law, had to go to China and seek enforcement through a Chinese court. Now, if the banks did not have a New York branch, just one last question, and then I'll yield the floor. If the banks did not have a New York branch, if for whatever reason they conducted their business elsewhere, but in this case, somebody came from the Chinese branches to New York to conduct business, it sounds like you're saying the separate entity rule would still bar jurisdiction, even if, or sorry, bar, you know, subjected them to the asset freeze, even if a court determined that that was purposeful availment and the Chinese branches themselves were operating in New York, you're suggesting that the separate entity rule doesn't even require that there be a New York branch. It just privileges conducting business in New York as not allowing the finding of jurisdiction. Is that your view? Our position is when it's the type of doing business or banking conduct that is really indispensable to being an international bank. And we believe that correspondent settlement accounts qualify for that, supported by our amicus, that if that were a trigger for not a lot, for not respecting the separate entity rule, there would effectively be no separate entity. So, yeah. Because the conduct was the kind of conduct that would occur at a New York branch, it wouldn't apply. But if a Chinese company came to New York and did some kind of extraordinary thing that could reach them in that case. Yes, that might, that might be a different analysis. I would suggest that the inquiry would be how essential or not to being an international bank is the activity in New York. And it's conceivable that there could be different cases. If the separate entity rule is rooted in comedy, it's about international comedy, why does it apply only to New York? Why wouldn't we say the same thing about, you know, Miami branches of a foreign bank? Shouldn't the same comedy principles apply everywhere? Well, certainly under under Rule 65 or under any federal comedy analysis, as Gucci suggests, you have to go through the comedy analysis. And I think just just quickly, 403 is the comedy analysis for an asset freeze. It's a different analysis, as Gucci recognized from 442 for discovery. So, yes, as a federal matter, you would you would apply comedy. Comedy applies pre and post judgment. I'm not aware off the top of my head what Florida does in terms of a separate entity law or not. I think that the federal law and the New York law here are sort of mutually self reinforcing. But I think that they're certainly consistent. And I think under either approach, we should prevail here. OK. Judge, I have one short and I think last question. Does the record contain the date and amount of the first post judgment withdrawal from the identified accounts? I I would have to follow up with the court after checking into that. I don't have a site for that at my fingertips, unfortunately. But if it's in the record, could you then? You know, yes, the presider will permit. Send us a letter citing to be clear what I'm asking about a post judgment withdrawal of funds by the defendants from the identified accounts. Yes, we will do that if it exists and if it does not exist, we will state. Great. Well, if it doesn't exist, I wonder if it's probably not a matter of dispute. Perhaps the parties could agree if it's in the record. That's very helpful if it's not in the record. Perhaps the parties could. I imagine it's not in dispute. These banking records are available somewhere to tell us the year, the date and the amount of the first post judgment withdrawal. Thank you. If the court has no further questions, I will rest on my briefs. Thank you, Mr. Weiss. First, we'll hear next from Mr. Hoffinger. Just thank you, Your Honor. May it please the court. My name is Adam Hoffinger and I represent the Agricultural Bank of China or ABC. We joined the arguments made by counsel for the other banks to affirm the decision of the district court and these arguments and the holdings of the court below apply with particular force to our non-party client. With respect to ABC, given the limits of time, I want to address two primary additional arguments  First of all, with respect to ABC, there was no clear and unambiguous order that ever identified the accounts that ABC was required to search for or to freeze. And in particular, ABC never received any account numbers. And it's interesting that in response to Judge Newman, when asked by Judge Newman whether any of the judgments or subsequent orders ever bound the banks, Mr. Weigel, the only thing Mr. Weigel pointed to was the list of accounts and decided to join Appendix 527. Now, we don't agree with Mr. Weigel that that's the correct answer, but if that's his only answer, then it's determinative as to us because we never received in the form of the orders or from plaintiffs any account numbers or any accounts. And as a result, for ABC, ABC could not have ascertained from the four corners of the order as required by GUCCI precisely what acts were forbidden. Now, secondly, and- But did ABC join with the other banks when they went to the district court? Yes. To say that the orders were not enforceable because of the separate entity rule and because of comedy concerns? Yes. Did ABC say at that time that it also wouldn't apply to ABC because you couldn't tell from the order that there were any accounts at your institution that were covered by the orders? Well, I didn't represent them at the time. I don't think there was necessarily an opportunity for that. And frankly, it wasn't necessary because part of what was going on at the time was that the plaintiffs were constantly telling the courts, Judge Seilen and Magistrate Freeman, that the orders didn't apply to the banks. And so when you consider- I understand. I understand. That's a different argument. That's a different argument, and we just addressed that with both sides. But you're saying that it doesn't apply to you for the separate reason that you couldn't tell from the order that there would be anything that would apply to you, but you went to the district court and you said, it looks like this order is supposed to apply to us, but it shouldn't apply because of two legal reasons, which are- or I guess three. There was jurisdiction, the separate entity rule, and comedy. But you did not say that you couldn't tell from the order what accounts or what clients of your clients were covered, right? We- If that was the problem, I guess, why did you think it applied to you such that you went to the district court to clarify those issues? And why didn't you raise that objection? Well, first of all, the answer is no, we didn't raise them. And most important, we're talking about in the context of contempt, Your Honor. So if you're- I guess I would submit that it's difficult for us to imagine that our failure, even assuming that we did to raise those points at that time, especially in the face of what was happening and what the plaintiffs were representing themselves, it's difficult to imagine that that would give rise to contempt. But the- Well, let me put it in a different way. I think you just said you had no way of knowing that it applied to you, but you still, after the issuance of the order, showed up at the district court and objected to its application to you. So obviously, you had reasons for thinking that it applied to you, right? Well, to be clear, what I said was that ABC could not ascertain from the four corners of the order precisely what acts were forbidden, which is what Gucci requires. So in other words, it's not just a question of whether it had some application to us,  and again, all of the banks tried to ascertain what application the orders had and were met with clear representations from the plaintiffs that they didn't apply to us. So that when you combine that with the fact that we didn't have- even have the account numbers in our case, and there were other things- Okay, I get that argument. I get that argument. I interrupted you, and you were going to make a second point, so why don't you make that? Thank you, Your Honor. The second point, and this is very important because I know there's been a discussion of this, there is absolute- there's no evidence of the kind of active concert or participation required by Rule 65 and the case law in this circuit and in other circuits. Now, what Next is essentially asking you to do today, and in response to Judge Newman's questions, what Mr. Weigel is essentially saying is that the mere either permission or effectuation or allowing withdrawals to be made or some transactions to be processed, that in and of itself alone automatically amounts to active concert or participation sufficient to find contempt required by Rule 65. There is not a decision of this court or any other court that upholds that. And in fact, the Reliance case, which I know we've had discussion, but that's the one case that Next heavily relies on, is absolutely distinguishable, and it demonstrates what must be intended by active concert or participation and how it's not present here on behalf of any of the banks, and certainly not ABC. In Reliance, the depositor- the account holder was a major depositor known to the bank. There's no evidence of that in this case. And the bank actually helped actively the depositor open accounts, close accounts. They issued cashier's checks. That clearly can be seen as what the rule contemplates by active concert or participation. There's nothing like that here. In NML, and in NML also, there was, which is a second circuit case, also much closer participation, knowledge of the violation of the injunction, and a very also important distinguishing factor. In that case, in NML, the banks never sought clarification as to whether the injunction applied to them. Here, we did just the opposite on a number of occasions. And as the court has recognized, Judge Scheindlin actually, you know, essentially passed it along for another day. So, this circuit has never held, and no case law that NEXT has ever signed, has ever cited, has never held that merely processing banking transactions amounts to active concert or participation. And frankly, it would be almost a kind of rewriting of the statute or certainly a stretching of the statute to read it that way, which is what they're asking for. So, the combination of the fact that restrained assets were never adequately identified, and why we should not be held in contempt. And nothing, we haven't discussed at all the standard of review. But I think it's important just to note that when it comes to, obviously, it's abuse of discretion and clear error with respect to factual findings. But when it comes to contempt in particular, this court in city of New York versus local 28, second circuit in 1999, and Judge Newman, you were on that panel, specifically recognized the formidable, and I quote, and potentially harmful nature of the contempt power. And in applying the standard of review. And I mentioned that because we're not just having an academic conversation about what could have been done and how it could have been done better. We're actually talking about whether foreign banks can be held in contempt and subject to that extreme remedy under these circumstances. And I think for all the reasons set forth by my colleague, and for the reasons set forth in our brief, the district court decision should be affirmed. At the end of the day, this appears to be little more than an attempt to reap a windfall return from a non-party with deep pockets but no liability. And if the court has no further questions, I'll conclude. Thank you. Thank you, counsel. Mr. Weigel, you have three minutes for rebuttal. Thank you, your honor. First off on the comedy point, I would just like to point out that in the Gucci case, that quote is related to the posture of that case, namely that we had moved to compel compliance and that a comedy analysis is not required in every instance. It's only required when there's a conflict between various state's laws. So it would be wrong to say that you need to do comedy analysis in every case. And in this case, at the record, at JA 1491 and 1492, the Bank of Communications submits an affidavit where they said that in 2017, or maybe it's 2018, they finally placed the merchant names on the bank's bank list and terminated financial services to those merchants. That's during the pendency of the motion to compel. And that affidavit says that those measures were taken in a manner consistent with Chinese law. So these banks could have terminated the services. I'm sorry. I'm sorry. During the pendency of the motion to compel? Yes. We moved to compel. Oh, you mean for discovery? Yes. And then they responded. I got it. Okay. The second point I'd like to bring your attention to is that— But wait, just before you move on to that, I mean, the banks here did come into court and allege a conflict between U.S. law and Chinese law, right, when they were objecting to the asset freeze orders. And the district court— Yeah, in July of 2015, the banks came to the court, but the injunctions were issued in— starting in December of 2013. And at J85030 is a list of the accounts, and it shows the freeze date and the last identified transaction. And I'm sure there are more, but you can just tell from that chart that there are accounts in which all of the transactions occurred that we are seeking contempt for prior to the time that the banks ever approached the court and asked for any clarification. So they were moving money for these counterfeiters before they ever came to the court and asked the court for permission. Excuse me, you have one minute left. Thank you. Two quick things. One is that what these counterfeiters were doing was money laundering, and that's not routine banking. Transacting in counterfeit goods or trafficking in counterfeit goods is a felony. It's a predicate act for money laundering. These banks were supposed to be looking out and preventing that. Even if we hadn't told them anything, it was their obligation under the money laundering laws to look out for these kinds of transactions and stop them. They got, effectively, a cheat sheet from a federal judge saying these people are engaged in counterfeiting, and they should have stopped it right away, and they did not. And that's not routine banking. And finally, the Leachy case on the separate entity rule. The Leachy case involved no branch at all in New York. The New York Court of Appeals held that the transacting business in New York through a clearing account was, in fact, transacting business, and that if the conduct had any connection, had a relationship to the transacting business, that the bank could be subject to jurisdiction. In that case, the Lebanese Canadian Bank had no bank branch in New York, and it was held to be accountable in New York. Similarly, Kohler versus Bank of Bermuda, the bank did have a branch, but the Court of Appeals found that because the bank itself was subject to personal jurisdiction, the court had jurisdiction to freeze the assets and to compel the Bermuda Bank, in that case, to turn over a soft certificate. And Kohler was not overturned by NML. And I would say that Kohler is the law today, and the idea that you get some sort of get out of jail free card by opening a bank branch in New York. Well, could I ask you just to respond to the argument of opposing counsel that said, well, if the activities that are taking place in New York, the basis for the jurisdictional, defining a personal jurisdiction, are just the normal activities that would attend having a branch in New York, then it would offend the separate entity rule to subject the foreign branches to an asset freeze. And so maybe if they were doing something other than the activities that normally attend having a separate branch in New York, you might have jurisdiction over them and be able to subject them to an injunction. But here, all that happened was the banking activities you would expect to happen at a New York branch. And that was the basis of the jurisdictional ruling, and that can't be a basis if we believe in the separate entity rule for subjecting the foreign branches to the asset freeze. What do you think about that? I think the factual predicate to that is wrong, because banks all over the world, without branches in New York, maintain clearing counts in New York. When you wire transfer money, and if I were going to send $100 to Mr. Westing Lee at the Bank of China, what I would do is I would tell my bank, Chase, that I want to wire $100 to Mr. Lee. Chase would, on its book, transfer $100 from my account to the account of Bank of China at Chase. That's all that happens. That's all done in New York. And in this case, this was done independent of the branches. The banks could have cleared it through their branches, but they didn't choose to. They cleared it through Chase or any of the other clearing accounts. The banks all over the world have clearing accounts in New York. Some have branches, some don't. But the Leachy case says that that is transacting business in New York, not the old doing business. Because the Bank of China had a branch on Madison Avenue for any purpose. That's transacting business. And the cause of action has to have some relationship to that transacting of business. It's not causal, but it can't be completely untethered is what the Court of Appeals says. And here, this was found, and it wasn't contested on this motion. It was found in the motion to compel compliance with the discovery orders that the banks were subject to specific personal jurisdiction here because they had conducted literally thousands of transactions through MasterCard and Visa clearing accounts in New York and hundreds of wire transfers through New York. And think about this for a minute. Their argument is that every time you go to freeze an account, you have to make a separate motion to the court to compel the bank to be bound. Not only would that sort of burden the court, not only is it completely impractical because by the time we get around to making the motion, even if we do it immediately, the court doesn't decide it instantaneously, the money will be gone. And that's not what's required by 65b-2, and it is not- Well, it actually seems to me it's more than just requiring you to make a motion to compel. I think opposing counsel said that you actually would be required to go to China to seek recovery on a judgment as a matter of international comedy. Do you find that plausible? The New York Court of Appeals and Kohler said exactly the opposite of that. And Kohler was not overturned. Kohler was a bank in Bermuda. And they said that a New York court with personal jurisdiction over a defendant, whether it be a garnishee like a bank or a defendant in lawsuit, can be required to bring the money in. In the Hotel 71 case, the court made it plain that if you have personal jurisdiction over a defendant, you have control over that defendant's assets. So no, it would completely throw judgment enforcement on its head and it's not required. What they are proposing is a blanket comedy rule that says that China wins. And that's not the law. There is a requirement for the court to do a comedy analysis when there is a conflict of laws. But as the bank's affidavits that were all submitted in opposition to our motion to compel responses to the subpoenas say, there were things the bank could do. They could freeze the accounts. They could put them on blacklist. They could have stopped transactions. And they just didn't do it. And the transactions we're talking about occurred, well, some of them anyway, occurred before the bank came to court and asked for clarification. And the point is that if you're going to violate an injunction, there's no policy reason why a court would want to encourage people to aid defendants in violating injunctions. And no reason to give a bank guidance in advance to give them comfort that they can do that without consequences. And that's not what NML says. NML says payment system participants have not been described due process because if and when they are summoned to answer for a violation, answer for assisting in a violation of district court's injunctions, they will be entitled to notice and a right to be heard. Due process is satisfied if once the bank are called to answer for violating the injunction, they are given an opportunity to be heard. And with that, if Your Honor, if there are no more questions, I will stop. Thank you, counsel. We'll take the matter under advisement.